JOHNSTON et al. v. .REYES et al.
(No. 5608.)

(Court of Civil Appeals of Texas. San Antonio.
Feb. 9, 1916.)

1. WILLS ⬤➾440—CONSTRUCTION—INTENTION
OF TESTATOR—CONSTRUCTION AS A WHOLE.
     The intention of a testator as manifested
by the language of the will taken as a whole
controls any particular paragraph.
     [Ed. Note.—For other cases, see Wills, Cent.
Dig. § 956; Dec. Dig. ⬤➾440.]

2. WILLS ⬤➾538 — CONSTRUCTION — ESTATE
CONVEYED—"IN CASE SHE DIES."
     Where a will leaves property in fee to sev-
eral legatees, and other property to the only
legatee referred to in endearing terms, with the
provision that "in case she dies" it shall pass to
others, the quoted phrase refers to her death
before that of testator, and where she survives
him she takes in fee.
     [Ed. Note.—For other cases, see Wills, Cent.
Dig. §§ 1162, 1302–1309; Dec. Dig. ⬤➾538.
     For other definitions, see Words and Phrases,
First and Second Series, In Case of Death.]

3. WILLS ⬤➾683—CONSTRUCTION—TRUST.
     Where the third paragraph of a will leaves
certain real property and improvements thereon
to the heirs of testator's son, the fourth para-
graph gives certain real and personal property
to a granddaughter, and in case she dies to
others, a portion of the fifth paragraph, direct-
ing that "this property bequeathed" shall be
placed in trust and its revenue equally divided
among beneficiaries named, applies only to the
property described in the fourth paragraph and
only in case of death of the legatee therein nam-
ed before that of testator.
     [Ed. Note.—For other cases, see Wills, Cent.
Dig. §§ 1603–1606; Dec. Dig. ⬤➾683.]

Error from District Court, Maverick Coun-
ty; W. C. Douglas, Judge.

Action by Ninfa Johnston Garcia Reyes
and husband against Adolfo G. Johnston and
others. From judgment for plaintiffs, de-
fendants bring error. Reformed and af-
firmed.

J. R. Murray, of Eagle Pass, for plaintiffs
in error. Sanford & Wright, of Eagle Pass,
for·defendants in error.

FLY, C. J. This is a suit instituted by Nin-
fa Johnston Garcia Reyes, joined by her hus-
band, Garcia Reyes, against Adolfo G. John-
ston, Charles G. Johnston, Ricarda Faz de
Johnston, and Alex Lyall, guardian of seven
minors, for the purpose of procuring the con-
struction of a certain will executed by C.
S. P. Johnston, deceased, on December 4,
1909. Defendants in error claimed that
under the terms of the will she was be-
queathed certain property in fee simple and
unincumbered by any trust. The opposite of
this was asserted by plaintiffs in error. The
will was construed as contended for by de-
fendants in error.

The will, omitting the introductory part
and the first and second paragraphs, which
provide for payment of debts and burial ex-
penses, and the clause providing for the ap-
pointment of Mrs. Ed. Schmidt as executrix,
and the clause providing for a substitute ex-
ecutor, is as follows:

"3. I do give and bequeath to my dear children
as follows: To my son Frederick P. Johnston,
legal heirs out of lot 77½, block 3, range 3 (in
the town of Eagle Pass, county and state afore-
said), 78 ft., fronting on Jefferson St. (a little
more or less), beginning on the southeast corner
of the dividing line joining Andres Flores prop-
erty and running west; thence running west,
72 feet along the line of the house now occupied
by Juan B. Garcia, thence south 78 ft. to
Andres Flores line; thence east 72 feet to the
place of beginning, with all improvements—to
take possession following my death.

"4. I do give and bequeath to my dearest
adopted granddaughter, Ninfa G. Johnston,
daughter of my deceased daughter, Annie John-
ston, the remaining parts of lots 77 and 77½
aforesaid, together with all improvements and
household and kitchen furniture, and all other
real, personal or mixed property which·I may
possess or be entitled to; and in case she dies
½ of her interest to fall to the legal heirs of
my deceased son Fred P. Johnston and the other
½ to be equally divided between my adopted
sons, Adolfo G. Johnston and Charles G. John-
ston, her brothers. And when these 2 last
named, Adolfo G. Johnston and Charles G.
Johnston die, their interest to fall to the above
heirs of Fred P. Johnston.

"5. I do direct that this property bequeathed
shall be placed to drawing an income to the
best advantage possible, and its revenue be used
to defray all expenses, taxes, repairing or im-
provements on same, and whatever surplus ac-
cumulates, if any, to be duly and equally divid-
ed among said beneficiaries to help their support
—until all of them become of lawful age."

Very little light is thrown on the execution
of the will, the agreement as to the facts not
even indicating when the testator died, nor
any other facts, except that the will was
made during his last sickness; that at the
time Ninfa Johnston was a minor, but is
now over 21 years of age; that the testator
was of sound mind and Ninfa was in good
health when the will was drawn. There is
nothing to indicate whether the testator real-
ized that it was his last sickness or not, and
that his death was imminent when he ex-
ecuted the will. It is not stated whether the
will was a holograph one, although witnessed
by only one witness. In fact, but little effort
seems to have been made to secure facts
which might have assisted in properly con-
struing the will.

[1] The intention of the testator must be
ascertained from the language of the will,
looking to all parts of it to ascertain the in-
tention. All rules of construction are in-
tended to aid in ascertaining the desire and
intention of the testator. The intention of
the testator as manifested and indicated by
the instrument taken as a whole will control
any particular paragraph of a will. Schoul-
er, Wills, § 462; Crosson v. Dwyer, 9 Tex.
Civ. App. 482, 30 S. W. 929; McMurry v.
Stanley, 69 Tex. 227, 6 S. W. 412.

By the third paragraph of the will, 78 feet
out of lot 77½, block 3, range·3, fronting on
Jefferson street in Eagle Pass, and fully de-
scribed, is devised in fee simple to the heirs
of Frederick P. Johnston, deceased son of the

testator, and they were authorized to take possession immediately after the death of the testator. This absolutely and unconditionally vested the title to the land in the devisees and gave them immediate possession. In no subsequent part of the will is there any desire evinced to in any way disturb or limit that clause of the will.

[2] In the fourth clause the only terms of affection or endearment used in the will are those describing Ninfa G. Johnston as his "dearest adopted granddaughter." He describes her as the daughter of his deceased daughter as well as his "dearest adopted granddaughter," and it may be inferred that she had been taken into his household, and that he had the greatest affection for her. As indicating his love, he devised and bequeathed to her the remaining parts of lots 77 and 77½, together with all other property real, personal, or mixed that he might possess or be entitled to. The bequest is followed by the proviso that "in case she dies" the property should go to the others named therein. Those words, "in case she dies," are obscure and are the prime cause of this litigation; the contention on the part of plaintiffs in error being that it was the intention of the testator to vest only a life estate in Ninfa Johnston. It will be noted that the estate devised to his son's heirs, for whom no attachment was indicated by the language of the bequest, was in fee simple and to hold that the granddaughter who had been adopted by him, who was described as "my dearest adopted granddaughter," to whom he bequeathed all of his estate with the exception of the one parcel of land given to his son's heirs, had only a life estate vested, would be to render nugatory the intention to give to his granddaughter the bulk of his estate in fee simple. To make the words, "in case she dies," mean when she dies, would not be consistent with other parts of the paragraph, and undoubtedly defeat the desires of the testator. It is much more reasonable, and more in conformity to the language used in making the bequest, to construe the words "in case she dies" to mean in case she died before the testator died. No one would use the term "in case she dies" except in reference to the happening of some other event, and that is shown in the very paragraph under consideration where it is provided that the property of Adolfo G. and Charles G. Johnston, that might come to them from their sister Ninfa, should "when they die" go to the heirs of Frederick P. Johnston. It is not disclosed when the testator died, nor whether he expected to die during the sickness from which he died, and it may be presumed that, like most other men under like circumstances, he knew he might die, but felt that he might recover and Ninfa might die before he did, and, in case she died before he did, he desired to make provision

as to the property. It would be unreasonable to hold that the testator would use the words, "in case she dies," to mean when she dies. He knew she would die at some time, and he did not desire to prepare for that; but, in case she died before he did, then he desired to dispose of the property.

[3] The trust intended to be created in paragraph 5 of the will had reference only to the property bequeathed to Ninfa, and only then in case she died and the property passed to the other legatees named in the paragraph. The testator had concluded his will as to the property bequeathed to his son's heirs, and by "this property bequeathed" he meant that which might reach the hands of his minor grandsons, because he makes no provision for the trust as to the property if it passed to Ninfa, but it is to be put in trust for beneficiaries and not for a single beneficiary.

With no extrinsic evidence as to the age and domestic relations of the testator, without knowledge of how long the last sickness of testator continued, with nothing to guide the court except the simple language of the will, we are of the opinion that the intent of the testator will be attained by holding that the land given to Ninfa was not a life estate, but was a devise of the title in fee simple. It would not be contended that only a life estate in the personal property was intended, for in a few years much of it would wear out and become useless, and the same language is used in the will in regard to the personal property as to the real estate. We must conclude that the testator intended to give the absolute title to all of his property, except that given to his son's heirs, to the only one mentioned in the will in terms of love and affection.

In the paragraph directing that the property be so used as to produce an income no trustee was named, and it was merely the expression of a wish without being mandatory. If it referred to the property while in the hands of his granddaughter, the trust has been executed, for she is over 21 years of age and entitled to the property.

We differ from the trial court in the conclusion as to the words, "this property," referring to all the property, and the judgment will be reformed in that respect, and as reformed will be affirmed.

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Application for writ of error pending in Supreme Court.