## BROOKER et al. v. BROOKER et al.
### No. 12998.

Court of Civil Appeals of Texas. Fort Worth.

Oct. 12, 1934.

Rehearing Denied Nov. 23, 1934.

Chester B. Collins, Gillis A. Johnson, Warren Scarborough, and Cantey, Hanger & McMahon, all of Fort Worth, and Baker, Botts, Andrews & Wharton, of Houston, for appellants.

Slay & Simon and Thorp Andrews, all of Fort Worth, for appellees.

LATTIMORE, Justice.

This is an appeal from a judgment refusing to annul and suspend, under article 3433, R. S., the provisions of the will of J. N. Brooker. Appellants contend that the will violates the rule against perpetuities and does not provide for the vesting of the title to the real property of the testator with that certainty required by law. The will, so far as necessary to this opinion, is as follows:

"That I, J. N. Brooker, of the County of Tarrant and State of Texas, being of sound and disposing mind and memory and in the enjoyment of good health, and desiring at this time to make provision for the management and disposal of whatever estate die possessed of, at the time of my death, do make, declare and publish this as my last will and testament. Hereby revoking all other wills, if any heretofore made by me.

"Item Second: I have conveyed, or shall hereafter convey or may at any time convey Real Estate by deed to take effect after my death to my sister, Alice Brooker. And also to my niece, Tina Brooker. Said deeds are to become in full force and effect immediately after my death. And possession of such property by them to take effect at that time. And any and all such property so deeded is to belong to Alice Brooker, or Tina Brooker as specified in such deeds. And such property is not to be recognized as my property at my death, nor to be included in the management of division of my estate.

"Item Third: I will and direct that all the remainder of my estate, real, personal, or mixed of which I may die seized and possessed or entitled to; (except as mentioned in items one and two of this will) shall be held together and not partitioned during the life of my last surviving legatee, and twenty-one (21) years thereafter. But if my heirs should wish to hold my estate together for longer period, if they continue the management herein provided; then it is my wish and desire that they should have the right to do so, by a majority vote of my legal heirs that are over Twenty-one (21) years of age, at the time of such vote. And if they legally can, and do take such a vote; the such vote must be taken on or about the end of the Twenty-one (21) years mentioned for division, or near the end of any legal extended time for closing the management and division of this will. I further direct that said remainder of my estate shall be held, managed and controlled by five Trustees hereinafter named by me.

"Item Fourth: I will and direct that said five Trustees shall at all times have as many as three of the legatees of this will in its membership, and if at any time there shall not be living as many as three of said legatees qualified for such membership, then the number shall be made up out of such suitable heirs of said legatees as may be of age and qualification necessary to perform the duties of said Trusteeship. My intention and purpose is that there shall always be among said Trustees at least three of my legatees or heirs designated in this will, or the descendants of those heirs who are of sufficient age and qualification to take the place of those who may cease to be Trustees. A General Manager shall be selected from among said Trustees; and the fees of each of said Trustees and also the compensation of the Manager shall be fixed and controlled by a full vote of all said Trustees, and it is hereby provided that said fee shall not exceed the general average prices paid for such work in the State of Texas; and every such account of any Trustee shall before payment be approved by at least four of the Trustees and paid on the check of the General Manager. The General Manager shall be paid a salary by the month. The other Trustees shall be paid only for the time necessary in the performance of the service and duties required of them by reason of their said Trusteeship. Any Trustee or the Manager may be changed by a vote of four of the Trustees, or by a full vote of all of said Trustees, and said vacancy so created by said change may be filled by the election of another Trustee or Manager, or both, by a vote of four of said members, or by a full vote of all said Trustees; and any vacancy by reason of the death; removal or resignation, inability or refusal of any of said Trustees to act may be filled in the same manner.

"Item Seventh: I will and direct that the net income of my said Estate after paying all expenses of the care and management thereof, shall be divided by my said Trustees every six months among my legatees in the proportions as follows, towit: One-Sixth (1/6) of said net income shall be paid to my Brother, John Brooker; One-Sixth (1/6) shall be paid to my Niece, Tina Brooker, she being the Daughter of my Brother, W. T. Brooker by his First Wife; One-Sixth (1/6) each to my four Sisters, Mrs. Lizzie Reid, Mrs. Laura Morris, Mrs. Annie C. Weatherby and Miss Alice Brooker, and said net income of my said estate shall be partitioned and paid over to said above named legatees in the

proportions above stated at the end of every six months during the entire time before the final division of this said Estate as above provided. The principal of my said property is to be kept invested as nearly as possible and managed by said Trustees as above outlined for the full term of this will. Until the property, and securities is all divided and alloted to the heirs as herein mentioned and provided for. All of the children of my brother, W. H. Brooker and his wife Julia Brooker, both deceased and all of their heirs; also my brother W. T. Brooker and his wife, Emma Brooker and all of the children of my brother, W. T. Brooker by his second wife, Emma Brooker, are herein and hereby disinherited by me, that it is not my intention to will or bequeathe to or convey in this will to either of my said brothers W. H. Brooker and W. T. Brooker, their wives or their heirs (except to Tina Brooker, daughter of W. T. Brooker by his first wife.)

"Item Eighth: I will and direct that immediately after the expiration of the Twenty-One (21) years above mentioned, or any legally extended time thereafter, I direct that my Trustees shall partition among my legatees hereinabove mentioned all the property belonging to my said Estate in the hands of said Trustees, real and personal among my said six legatees hereinafter mentioned in the proportions as stated in Item Seven of this will; that is, they shall divide said Estate among said Six legatees in the proportions as directed for the division of the net income of my said estate as set forth in said item seven of this will.

"Item Ninth: I will and direct that in case of the death of any of my said legatees hereinabove named before or after my death, and before said property shall have been partitioned in accordance with the terms of this will; then I direct that the bequeathe herein made to such deceased legatee or legatees shall go to his or her children to be divided among such children, or their descendants, and in case of the death of any of my said legatees herein named before the expiration of this will as hereinabove provided; I direct that my Trustees shall take charge of, manage and dispose of such interest of the child or children of my deceased legatee as is provided for herein for my legatees; provided that said Trustees shall only pay over to a minor such sum out of the income belonging to such minor as they shall deem necessary for the actual support and education of such minor, and may invest the remainder of such income for the benefit of such minor. But this estate nor said Trustees shall not

be liable for any loss through such investment. Provided that if any of my legatees shall die before the final distribution of my estate, by my trustees, without, by their own personal increase, leaving a child or children, then I direct that the entire share devised to such deceased legatee or legatees shall revert to my estate and become a part thereof.

"Item Tenth: I will and direct that none of my legatees herein named, or any of their heirs, shall have any right to sell, convey or dispose of in any manner, pledge or encumber any of the real estate or bank stock or other stocks and bonds, or securities of any other class of kind whatsoever (or the income from the same) that is hereby bequeathed to them, or any of them, before the same shall be actually delivered to them. Nor shall any of my legatees or their child or children be authorized or have the right to dispose of or encumber any real estate, bank stock or any other securities whatsoever mentioned herein and devised to them by this will, (excepting the income from same during their natural lives, except they may exchange, trade or donate property or securities to or with each other). This provision in Item Ten (10) is not to prevent my legatees or heirs while acting as Trustees, or manager from handling or disposing of securities or property as is set out and provided for in Item Six (6) of this will.

"Item Seventeenth: I hereby appoint my Niece Tina Brooker and my brother John Brooker, and my sister Alice Brooker and my friend Ben H. Martin of Fort Worth, Tarrant County, Texas, and my nephew, Omar C. Weatherby, Trustees of this my will, conferring upon them the duties and powers contained and defined in this will; and I appoint my said Niece, Tina Brooker as General Manager of my said estate with the powers and duties hereinbefore in this will granted to such General Manager. Bond for Manager or Trustees may be demand by a vote of Four Trustees."

By testimony, it appears that the will was written by the testator, a capitalist, and without the aid of an attorney. We observe that the will required the estate to be held together and not partitioned "during the life of my last surviving legatee and 21 years thereafter" by the trustees provided for in the will. We therefore must look to see who are the "legatees."

Item seventh provides that the net income be paid to six named persons who are referred to therein as "legatees." Item eighth directs the trustees to partition "all the prop-

erty belonging to" the estate "among my legatees hereinbefore mentioned," "real and personal among my said six legatees hereinafter mentioned in the proportions as stated in Item Seventh of this will," "that is, they shall divide said estate among said six legatees in the proportions as directed for the division of the net income of my said estate as set forth in said Item Seventh."

Item ninth provides that "in case of the death of any of my said legatees" before the "property shall have been partitioned" under the will, then the "bequeathe herein made to such deceased legatee shall go to his or her children." This is followed by detailed instructions as to procedure regarding such childrens' relation to their parents' share and the definite provision that if "any of my legatees die without child or children by their own personal increase, the entire share devised to such deceased legatee shall revert to my estate."

■ The estate includes some real estate. In an exact sense a legatee is not one who receives real estate by will, but is one who receives a legacy which is, in its true legal meaning, money or personal property or such as is physically delivered by some representative or envoy (legatus) as distinguished from the passing of real estate, title to which vests immediately on the death of the testator.

■■ However, it is no novelty for courts to construe words in the sense the testator used them, if that meaning can be determined from the will. Haupt v. Michaelis (Tex. Com. App.) 231 S. W. 706; Lamar v. Harris, 121 Ga. 285, 48 S. E. 932. In a literal sense, the trustees are legatees, by items third and fourth; the six beneficiaries named in item seventh are legatees, and so, by items ninth and tenth the children of the six are legatees. In item ninth the shares given the "legatees" are mentioned as "devised." We can thus see that the testator had in mind that the use of the term "legatee" was proper to denominate those who took under his will without any distinction between realty and personalty.

■■ We next seek to find who were the legatees that he referred to in item third whose lives were to determine the duration of the trust. If the "child or children" (named beneficiaries in items ninth and tenth) of the six nominated in item seventh are considered legatees, then the will violates the rule against perpetuities, for some of those children are, or may be, unborn. Clarke v. Clarke, 121 Tex. 165, 46 S.W.(2d) 658; Anderson v. Menefee (Tex. Civ. App.)

174 S. W. 904. We are not able to believe those words "child or children" are words of limitation and not of devise so as to apply the rule in Shelley's Case. The word "children" is not a technical word. It is ordinarily given its usual meaning unless the context of the will shows otherwise. The provisions of this will detailing how the estate of such children's share should be handled by the trustees and the provision for reversion to the estate of the original foundation share in the estate if such children be not born, prove that the testator had concretely in mind the children as remaindermen. While the rule in Shelley's Case is not a rule of construction of the testator's intent, none the less there was no law against Brooker creating a remainder to those children. It is only an obstacle to validating his will because he had earlier provided for the continuance of the trust during the life of his "last surviving legatee and twenty-one years thereafter."

There is much language in the will which indicates that the testator in using the word "legatee" intended it to refer only to the six named in item seventh. He there orders the income divided "among my legatees as follows" and named only them; he later calls them "above named legatees." In item eighth he says, "My legatees hereinabove mentioned," when no others had been mentioned to that stage of the writing. In that paragraph he makes plain that he considers the foundation moieties for division, the said six shares. He refers in item ninth to the "death of any of my said legatees above mentioned" as fixing the share to go to the children, which might be significant if he understood the meaning of article 2577, R. S. He provides for reversion if "any of my legatees shall die" without personal increase, and forbids alienation of the estate by "any of my legatees or their child or children," thus indicating he made a distinction between the six and their children in using the word "legatee."

However, if we adopt such word "legatee" as describing only the six and thereupon limit the duration of the trust to their lives plus twenty-one years and thus make such duration legal, we are confronted by item eighth which provides that the estate shall be finally divided among the "legatees" at a time when the last of the six have been dead twenty-one years, and we thus render item eighth impossible of performance. Also, the trustees cannot in that construction carry out the orders of the testator as laid down in item seventh to pay over to said "legatees" the income each six months "during the entire time

before final division of this estate." To uphold the term of the trust, we must give the word "legatee" one meaning for one part of the will and another meaning for another part of it, and this not because those portions suggest it, but only to try to reconcile those portions with item third. We believe such is not construction but only is guessing.

The only other alternative in seeking to uphold the will is to shorten the duration of the trust. Those provisions in item fourth, item seventh, and item eighth, which demand the dealings of the six beneficiaries with the trust to its completion, indicate that the testator had in mind a period of time for the existence of the trust which would probably or at least possibly find some of the six beneficiaries yet alive. This is contradictory to item third which extends such term twenty-one years beyond the death of the last of them. Accordingly, applying the rule of construction that earlier provisions of a will must give way to later conflicting provisions, we might strike down the provisions of item third prescribing the duration of the trust except that we cannot find anywhere in the will any indication of how long the shorter term of the trust should be.

It is our duty to uphold a will if we can find in its four corners a fair construction which will declare the dominant intention of the testator and that that intention is legal. Munger v. Munger (Tex. Civ. App.) 298 S. W. 470; Neely v. Brogden (Tex. Com. App.) 239 S. W. 192; McMurry v. Stanley, 69 Tex. 227, 6 S. W. 412. This we have striven to do. But we cannot write the will as we would have it or as we think we would have done had we moved the dead man's pen. We cannot find a dominant intent in this will unless that intent include a restraint against alienation—contrary to public policy and forbidden for ages by the rule against perpetuities. We are doing by this decision the thing that the testator forbade, to wit, giving a part of the estate to persons attempted to be expressly disinherited. But a will which is only negative is no will. Title must vest and it is not enough to declare who shall not benefit unless the will also provides what shall be done with the estate. We cannot find in this will that affirmative disposition which is legal. The judgment of the trial court is reversed and remanded with instructions to the trial court that he enter judgment annulling the provisions of the will of J. N. Brooker, with such other orders as will carry out this opinion, including orders to the district clerk of Tarrant county to certify such judgments and orders to the probate court of Tarrant county for observance.

DUNKLIN, Chief Justice.

I have heretofore concurred in the opinion filed by Justice LATTIMORE condemning the will in controversy as violative of the rule forbidding perpetuities, and wish to add the following which occur to me as additional reasons for support of that conclusion.

Item tenth has these provisions:

"I will and direct that none of my legatees herein named, or any of their heirs, shall have any right to sell, convey or dispose of in any manner, pledge or encumber any of the Real Estate or Bank Stock or other Stock and Bonds, or securities of any other class or kind whatsoever (or the income from same), that is hereby bequeathed to them, or any of them, before the same shall be actually delivered to them. Nor shall any of my legatees or their child or children be authorized or have the right of or encumber any real estate, bank stock or any other securities whatsoever mentioned herein and devised to them by this will (excepting the income from same during their natural lives, except they may exchange, trade or donate property or securities to or with each other."

Even though it should be said that under and by virtue of former provisions of the will, title to "real estate, or bank stock or other stocks and bonds or securities of any other class or kind whatsoever" should vest in the heirs of any of the legatees named in item seventh at the end of the twenty-one-year period next succeeding the death of the last surviving one, then such vestiture of title would occur immediately upon the termination of that period and would not be held in abeyance until the property was "actually delivered to them" as directed in the quoted provisions of item tenth. It is entirely probable that there might be some delay in the division and distribution of the property in the hands of the trustees when the twenty-one-year period terminates, and the expressed restriction against alienation during that delay would of itself be in violation of the law forbidding perpetuities. And the same must be said of the further restriction in the last sentence of the provision quoted against the right of any child or children who may finally be entitled to a part of the estate at the end of the twenty-one-year period, to encumber any of it at any time thereafter, except to exchange or donate it.

Attention is also invited to the last sentence of item ninth of the will, reading:

"Provided that if any of my legatees shall die before the final distribution of my Estate, by my Trustees, without, by their own personal increase, leaving a child or children, then I direct that the entire share devised to such deceased legatee or legatees shall revert to my Estate and become a part thereof."

There is no direction in any of the provisions of the will for a disposition of any interest that may so revert to and become a part of the estate. By items seventh and eighth, each of the six legatees named shall receive one one-sixth of the estate, even after the interests devised to other legatees have reverted and become a part of the whole estate. The interest devised to each of the named legatees would be the maximum amount to go to his or her respective heir or heirs, if there be such and if they should be held to succeed to the interest of that parent. That might result in intestacy of one or all the six interests attempted to be devised to the six legatees by items seventh and eighth who might die without issue.